Case Numbers 181190 and 181338 are Alexander Acosta v. Min and Kim, Incorporated, et al. Oral argument not to exceed 15 minutes per side. Ms. Victor for the appellant. Your Honors, may it please the Court. This is not the typical Fair Labor Standards Act that appears before you. This is not a case in which employees have come forward and said we were being underpaid, or that there was some artificial scheme to pay us less, or to do anything that would give the employees not the money that they felt they were entitled. This is a case where if an employee was sent home early and didn't work the full 52 hours, 40 hours at regular, at wait, and 12 hours at overtime, they were still compensated that amount because the employer had promised them that they would have that amount of hours. And if business was slow, this is a restaurant. So if we had a day like yesterday when a lot of people don't go out and they were sent home early, they still paid them the same. The prime purpose of the Fair Labor Standards Act was to aid the unprotected, unorganized, and lowest paid of the nation's working population. That is those employees who lack sufficient bargaining power to secure for themselves a minimum substance wage. This Court said that in Moran v. Albasset, LLC in 2015. You admit that the proprietors did not keep the requisite records of the time worked They didn't keep the kind of records that the Department of Labor requires, right? No, Your Honor, I don't, and here's why. Because they paid them on a basis of whether or not they worked. And actually, under the regulations, doing it the way they did with the day or not day does actually comply with the records. But what they did is when the Department of Labor came in, and we addressed that in detail in our reply brief, that that does actually, the way they kept records, fit the regulation. But when the Department of Labor came in, they said, we'll do what you want. So they did put in a time clock, and then that one fell apart so they did a different one. They did everything they could here to be in compliance because their goal is not to underpay. As Mr. Herr testified, the goal is to overpay. It's because this is a competitive market and it's hard to get a sushi chef. And the reason we put all the information in our brief about, and in the brief to the District Court about prevailing wage and so forth, their people were paid higher, using the Department of Labor's own prevailing wage standards, they were paid substantially higher than any market in the country but for California. And having a daughter in California who can hardly afford that money, I can understand the wages there. But here is not that instance. And why we would be asking you to remand this case, because summary judgment is not appropriate here, can be found in the District Court's own opinion. In it, the District Court said, and I quote from the District Court's opinion, beginning on docket number 81, page ID number 3007. In this case, defendants made a good faith effort to comply with the FLSA and its regulations. I'm skipping a few of their pages. Many, although not all, of their employees were compensated generously. Although defendants failed to keep adequate and contemporaneous employee time records, we disagree with that, or comply with the requirements for paying overtime, they paid their employees handsomely and records after the fact show that for many employees, the weekly wage they received meant it was possible that they were paid an hourly rate at or above minimum wage and then time and a half for hours in excess of 40 per week. In fact, no employees complained about the wages they paid. They were paid. So if it's possible that the employees were paid regular and overtime, if the District Court finds that many of the employees, it was possible that they were paid the accurate amount. Summary judgment is not appropriate. There was a record wrong that there was approximately a two-year period when they kept basically no records. And I thought that if an employee missed a day, such as yesterday when they couldn't get down there, that they would deduct a percentage of the pay. It was not that everybody would get paid regardless of whether they were there or not. Am I misstating that? Yes, you are, Your Honor. And on two things, so I'm going to answer them both separately. The first one is they didn't record for two years. No, that's not true. It only came up in plaintiff's reply brief, the Department of Labor's reply brief. They claimed they didn't get pay records from us in discovery for two years. That is not true. I carried these up to the bench with me because these are the time, the bait-stamped time records that were produced in discovery. Unfortunately, they weren't part of the record in front of the district court because we had no way to reply to a reply brief. And so we actually listed in our brief that we would like permission to submit these. These are the two years of time records that were produced in discovery. They're bait-stamped. They're marked confidential. And you can look in the protective order that was entered in this case, and it refers to these actual records. So that statement that we didn't produce these records is false. Here they are. The protective order speaks of them. I just had, when it came up in the reply brief, I couldn't stand up and say, no, here's the records you know darn well. You got them, and I bait-stamped them, and I sent them to you. And you got them because they didn't bring a motion to compel or to get them. If they didn't get them, the Department of Labor wouldn't have sat back and done anything. The second question that you have is would they deduct pay from the employees? No. What they would do is if you worked, I promised you 12 hours a day. I didn't promise you a weekly rate. I promised you I would give you, Judge Donald, 12 hours a day. So if you didn't work at all yesterday, you wouldn't get paid. I wouldn't deduct it. You just wouldn't get paid. You would have a zero for your time records on the old one. You wouldn't punch in and punch out when they put the time clock in back in 2015. But you would if you did work and you came in yesterday. And I told you at the beginning, because you saw all the employment contracts they signed. And I'll get to that in a second. But if you came in and it was really awful and I said, Judge Donald, go home. It's why you would be working in a restaurant, but go with me. Judge Donald, go home. We don't have much going on here. I would still pay you the 12 hours. So whether or not I sent you home at 5 or you worked until the end of the day, I would pay you that amount. And the government actually admitted that. If you look at our reply brief, we quote from the transcript where the judge says, now you admit if they had packaged this differently, saying to the government, if they had packaged it differently, that is, if the record keeping was different, then they wouldn't be in violation. They'd pay exactly the same amount of wages. And the government said yes. And they admitted as well in their briefs. So here we don't have a case where people weren't paid properly. Here we have a case where they did receive the right amount of wages, but the Department of Labor didn't like the way they kept their records. Ma'am, the government has cross-appealed on the liquidated damages. What's your take on that point? The judge was right there. The argument that I read to you at the beginning of my argument was from his liquidated damages where he said, I have the right to decide in good faith. There was no abuse of discretion. Okay. Well, that's what I'm trying to get at, exactly what the standard is. Isn't the norm, isn't the presumption there will be liquidated damages? Am I wrong about that? You're wrong, Your Honor. If you look at the case law we cite and you look at the actual statute, it said that they may determine that there is no basis for liquidated damages. And that's what the judge did here. He actually spent time on that. He went through and said that liquidated damages are supposed to be compensation. In its discretion, the district court may decline to award damages where the employer acted in good faith, shows acting in good faith, and had reasonable grounds to believe its act or omission complied with the Fair Label Standards Act, citing 29 U.S.C. Section 260. In your mind, what type of factors would give rise justifiably to an award of liquidated damages? Where someone is paying their employees improperly, where they're using a bonus not here to pay you when you don't work, but to hide in artificially low wages. It's for someone who is paying their employees, is stealing their tips, is paying their employees a dollar an hour, is making them do off-the-record work, is doing any number of those things. That's where liquidated damages might apply. Here, you have people who are actually paying their employees more. You have the government saying, if we repackaged it, then it wouldn't be a violation if it was in different record-keeping. Not that you didn't pay the right dollar amount, but that if you had different record-keeping. You have the district court saying the same thing. What this happens is you have an impermissible, if record-keeping is wrong, the remedy is injunctive relief. There are no monetary damages. Everybody here says the record-keeping is wrong. They probably paid the right amount, but we're going to assess $112,000 against them. That turns it into an impermissible monetary damage for bad record-keeping, which the statute does not allow. Here, no employee claimed that they had a problem. The only statement in the district court says, well, Mrs. Meng in her affidavit says employees complained they were paid, whether it was $40,000 or more. No one supported that. We asked them to give us the backup to that hearsay statement, which should not have been allowed in the affidavit. It's not in Rule 802D exemption. They refused to produce it. Then we filed a motion to compel. They said, no, it's protected by privilege. We then produced all of the documents from the employees where they signed recognizing that they were paid properly. We produced every one of those contracts to rebut that. So there isn't a single employee. Yet the judge even points out, no employee complained about the wages they were paid. This is one where, by what they're doing now, is to, you know, here's your hours in calculating. If you go home early, you don't get paid. The employees are actually being paid less than they were before. That is not the intent of the Fair Labor Standards Act. And the fact that there's a penalty of $112,000 shouldn't be applied. And in this case, we'd ask to remand not only for those reasons, but also there was no hearing or no determination or calculation of the damages in any way to set forth. There has to be at least some evidence of representative testimony. Here you have an investigator only who admits in her affidavit and deposition that my damages calculations are based primarily on speculation. And without more, without taking testimony, without examining it, there's nothing in this opinion that even examines the calculation of $112,000. It was accepted. So even if you don't remand on liability, we ask that you remand on damages, as you have done in cases, and Judge Sutton, that happened in a case in which you sat, where, excuse me, in Stein v. H.H. Gregg, where you did object to how the damages, how the representative sampling happened. You didn't believe in that case that there was any finding of overtime violation. But, but... I want to reserve your five minutes. Oh, yes, I'm so sorry. Thank you so much for your time. Thank you. Good morning, Your Honors. May it please the Court, I'm Sarah Marcus for the Secretary of Labor. Your Honors, in this case, Soul Garden was paying the same amount to its employees each week, regardless of the number of hours worked, whether they worked fewer hours or more hours. So if they worked more overtime hours than 12, which was Soul Garden's default schedule, they didn't receive greater pay. That violates the FLSA's overtime provision, in which Congress requires that employers pay an additional 50% premium for each additional hour worked. I think they did think they were complying with it. I mean, in other words, even if you're right, it seems like they did think they were complying with it. No one was complaining, and I think they thought they were pretty generous. Well, Your Honor, whether their employee complaints is not indicative of the employer's intent, or whether there was a violation, employees might not know their rights, they might be afraid of retaliation if they complain. I don't think that that is an important fact in this case. I think it's important to the liquidated damages argument, that they thought they were complying. Well, Your Honor, I would argue that the evidence is not consistent with the finding that they subjectively believe that they were in compliance, given that they weren't keeping the most basic records that would show whether they were paying overtime, including the number of hours their employees were working, and that they changed their explanation of how they were paying over the course of the case, and created reconstructed records that showed different methods of payment. Those behaviors aren't consistent with the genuine belief that they were in compliance. They seem consistent to me with the perspective of a small business that, you know, can't hire full-time accountants, probably doesn't have a big budget for all this, and I think you would agree that these requirements can be complicated for people that are running a small business. They can be complicated. I'm not sure that they were particularly complicated in this case. What the FLSA requires is to pay at least the minimum wage for each hour worked, and then 50% more than whatever the employees are receiving as their regular rate of base pay for each additional hour of overtime. They decided to pay a fixed amount that they adjusted according to their own methods, and then in order to explain how that included overtime, they created somewhat convoluted reconstructions of their records. So they created the confusion where there's a fundamentally simple requirement. Did her accountant die? Wasn't that part of the problem too? Or leave? I don't know what happened. She did pass away, but after the deposition, before her deposition could be taken, but during the course of the case. So that certainly wasn't the issue when they were devising their pay scheme and working with Wage and Hour during the investigation itself when they didn't change their pay practices and did not come into compliance. I would also remind you, Your Honor, that the liquidated damages standard is that the doubling of back wages is mandatory unless the employer can meet its burden of showing both subjective good faith and objective reasonableness. So what is the standard we use to review the district court's determination that they met that burden? Your Honor, the district court has discretion to reduce the amount of liquidated damages only if it properly finds that the employer has met its burden of making both of those showings, and it is our position that in this case the district court erred in its findings, both that it was incorrect in finding subjective good faith, and quite importantly, that it erred by not considering objective reasonableness, which just can't be shown in this case. The Fair Labor Standards Act regulations explicitly prohibit the type of payment scheme that Soul Garden was engaged in. If you look at 29 CFR 778.500B, it reads, it is not possible for an employer lawfully to agree with his employees that they will receive the same total sum comprising both straight time and all weeks without regard to the number of overtime hours, if any, worked in any work week. That's plain as day. It's not objectively reasonable to think that you can create a scheme where you're not paying your employees different amounts when they work different numbers of overtime hours. The Supreme Court said as much in case law dating from the 1940s that explain that the purposes of the overtime provision are both to compensate employees for the burden of longer work weeks. What does this record show with regard to what these people actually did know in terms of what was required by the Fair Labor Standards Act? My understanding of this case is that they continued the practices after they took over this business, they continued the practices as they had been under the prior ownership. So what does this record show of what they actually did know? Your Honor, they conceded in their interrogatories that they knew that there was an overtime requirement that they had to pay additional premium on hours worked over 40 when they took over the business. But I think the issue with liquidated damages is not what they affirmatively, whether they affirmatively knew they were committing a violation, but whether they'd taken affirmative steps to determine what their obligations were and to attempt to comply with them. Ignorance of the law does not excuse, of course, a violation or liquidated damages. Congress created a policy where employees are entitled to back wages and liquidated damages by default as compensation, not as punishment for deliberately bad behavior, but because employees suffer from not receiving their wages. How reasonable is it to keep a payment system in place when you take over a business? Aren't you allowed to assume they're complying with the law? Your Honor, I don't see why you would be. You are, as an employer, obligated to comply with the law. If there were some particularly tricky, there are issues that arise under the Fair Labor Standards Act where there are difficult factual or legal questions about whether an exemption applies. This is the most basic requirement. I get it that it's a basic requirement. I don't find it super basic with what they were doing here. In other words, with this 52-hour a week, it was complicated with what they were doing. I don't think it's self-evident to everybody that, oh, of course that's a violation. Your Honor, what the records show after they installed the time clock is that employees were frequently working more than 52 hours a week. Some of them were working 60 hours. It wasn't consistent, but they were paying the same amount to employees who worked more than 52 hours. I think that asking your employees to agree to a fixed amount, even if they're going to work more hours in a work week, is a fairly simple example of violating the overtime provision of the Act. It's very reasonable to assume that an employer would know, or should at least be on notice to find out if that is a violation of the overtime provision. What is your view of what the liquidated damages here should have been? They should be an amount equal to the back wages that were owed to the employees. Just out of curiosity, because I freely confess it has no real bearing here, but what happens to this business if we say, yeah, that's what should have happened here, you've got to pay double? $200,000. Your Honor, are all these employees that you're worrying about not having been properly compensated going to continue to be compensated at all, or is that going to be the end of it? Your Honor, I don't know the financial circumstances of this restaurant. When Wage and Hour initiates investigations and finds back wages, it endeavors to settle with employers and it arranges payment plans. The government is not out to close down businesses. It's simply the Secretary is charged with enforcing the Fair Labor Standards Act and explaining to employers and requiring them to comply properly with the Act. But in deciding, I mean there is some discretion in liquidated damages, right? I mean, your answer is it has to be doubled. Does it really? Judge Dee is not allowed to say, okay, fine, I'll do some, but I just don't want to do another $100,000. Your Honor, the provision that Congress wrote in Section 260 says that liquidated damages must be applied unless the employer can meet its burden of showing that it acted with subjective good faith and objective reasonableness. No, I'm picking up on Judge Batchelder's question. Let's assume you're right and Judge Dee abused his discretion, didn't satisfy subjective and objective. We say some liquidated damages, but doesn't he have discretion at that point, whether it's 100% or 20%? Your Honor, the discretion to reduce is only if the employer can meet its burden of making that showing. Once the employer shows both subjective good faith and objective reasonableness, then according to the statute, it has to be 100% if the employer can't make the showing. If the employer can, then it can be reduced to any percent, 0%, 0.5%. That's at the discretion of the district court judge. That's when the discretion comes in. Otherwise, the liquidated damages are automatic, again, because they're not considered a punishment, but rather compensation to the employees. I would remind your Honors that the Secretary asked in this case, in the event that liquidated damages weren't awarded for an award of prejudgment interest, similarly for compensation purposes, and the district court failed to address that request. If this court does not reverse on liquidated damages, we would ask that it reverse for an award of prejudgment interest. What is that? What's the calculation of that, out of curiosity? I apologize. I don't know what the current rate is, but I think it's based on some market number. I'm going back. How long has it been? Maybe that's the real point. The case was filed. I have the dates. Is it a couple of years? Five years? Ten years? The case was filed in December of 2015. So it would be then to now? I believe that's correct. It's certainly a smaller percentage than the doubling that the employees are entitled to, again, because there is no way for Soul Garden to show objective reasonableness where its violation is inconsistent with FLSA regulations and Supreme Court case law. So there's never an ability to not award? No, Your Honor. In other cases, it's possible to objectively reasonably believe that an employer is behaving. I thought you just said the objective prong is, were you in violation? Ignorance is no defense at all. So were you in violation? Answer, yes. So how does the subjective element even come into it? Your Honor, the question for liquidated damages is whether the employer can show that it believed that it was acting in compliance and that belief was objectively reasonable. So there are many cases where employers are trying to comply, but there is some confusion about the law or the facts of their case. In this instance, with these set of facts with this employer and its pay scheme, even if, as we dispute, they subjectively believed that they were complying with the overtime provision of the act, it was not objectively reasonable to think so because they simply were not paying more for more overtime hours. That is a violation of the overtime provision, and there's no way here in these specific circumstances. There are in other cases. There are certainly times when the employer is relieved of the burden to pay liquidated damages properly, but here there can't be a real question. They were not paying more to employees who worked additional overtime hours. Even though they were paying more to employees who didn't work the whole shift. In other words, they're looking at it as if you look at the whole week, month, whatever, and you balance it all out. Yeah, we were in compliance with all of that because we actually did, but that's not the way they recorded it. That's not what their record keeping showed, and they weren't, in fact, paying for actual overtime hours the time and a half, even though they were paying for hours not worked at all. Your Honor, initially they were keeping records showing which shifts employees showed up for and, and paying them based on the number of shifts that they, they showed up for. So there certainly are times when employees weren't working and weren't paid. Importantly, there were times when employees weren't working and were paid. I think that that's correct. If you assume that they were paid, assuming that they were working 52 hours, but they haven't presented any evidence that it's factually correct to assume that it worked out to an average because they weren't tracking the hours and they haven't provided any calculations to dispute the wage and hour divisions calculations. But in any case, deciding that you are going to, on average, pay people, right? Yes. As part of what they're complaining about is that they really didn't have the opportunity to provide some of the information you're now talking about. Your Honor, there were cross motions for summary judgment and they provided exhibits just as the secretary did and had an opportunity to make their arguments before the district court. I, there's nothing that they were prevented from asserting the, as to the records that, that opposing counsel addressed, the secretary attached to his exhibits to his motion for summary judgment, all of the records that he had received from Soil Garden, except for W2s, which were filed under a protective order and are, of course, sensitive documents. And, and this secretary, the wage and hour investigator who did the back wages calculations, used the records that Soil Garden provided to the extent they contained the relevant information in order to arrive at the calculations, as well as some reasonable inferences. And under the Mount Clemens. I want to get a question in before your time is up. Of course. You, you talked about there being a requirement of the satisfaction of the objective and subjective prompts on the liquidated damages provision in this case. Could you again, just hone in on why it was error for judge, judge Stee, not to award any liquidated damages. Are you saying that they did not satisfy one of those prongs?  and if so, which one didn't they satisfy? Thank you, Your Honor, both. But they didn't set up either. Yes. The one you're pushing harder is the objective one, isn't it? I think that's the simpler one. Right. They have, they are required to show both in order to be relieved of their obligation to pay liquidated damages. Judge C aired by not mentioning objective reasonableness at all. And we think in this case where the employer was not adjusting pay based on the number of overtime hours worked, that it wasn't objectively reasonable to believe they were in compliance with the act. And we are also arguing that the facts here don't show subjective good faith. This is an employer that did not keep the most basic records that changed its explanation of how it was paying that changed its explanation of who it had consulted and what, whether any conversations about what that FSA required had occurred at all. And then the evidence presented about those conversations is so limited that it's impossible to know. It's consistent with this record that the accountant told them, what you're doing is in complete violation of the act. They haven't presented evidence that they were received advice about their pay scheme and we're following it. Thank you. Thank you. Your Honor, I want to correct a misstatement that a sister counsel made and I recognize that she's not the attorney who wrote the briefs nor the attorney who was in district court. Two statements. First of all, the least one is Ms. Lee died before this lawsuit ever happened. That's how I got involved. Ms. Lee died in August of 2015 of cancer. Young woman, very sad, but died suddenly. So this lawsuit wasn't going on and then she died and records were created for this lawsuit. That's simply not true. The second thing, and that's much more important, is that counsel has said that this is a situation where if someone worked over 12 hours, they weren't paid overtime. That is not true and there is no evidence in the record as to that. If you read Judge Stee's 34-page opinion, not once does he say that. He says that the hours were paid, but the methodology was used wrong. His opinion basically focuses on an issue of bonus, which doesn't fit with the actual CFR for bonuses because this is not one being used to hide an artificially low pay scheme. Also, we brought up in our brief, our reply brief, our third brief, on page 15, page ID 22. Plaintiff, that being the appellee, does not cite to any example where an employee working less than 52 hours a week was underpaid. Plaintiff does not cite to any example where an employee worked over 52 hours a week and was either underpaid or not paid for the additional overtime hours. That was in our brief. It was not rebutted, and to come up here and say that we did not pay for overtime over 12 hours is not supported by the record. As to the records, here's... You don't say there that they were paid time and a half. They were paid time and a half. If I didn't say it right, they were, and the records show they were paid time and a half for any hours over 12. The reason is that, and Judge Donald, to answer your question, the CFR standard about fixed schedules that allows you to do a fixed schedule is 29 CFR 516.2C. So their original documents comply with that CFR, and that's why there is an objective belief that you can do it. It says employers in weeks in which an employee adheres to a schedule indicated by a checkmark, a statement, or other hours, or other method, that hours were in fact worked by him. They used an X or an O. That complies with the checkmark that the actual CFR requires. In this case, the schedule of the restaurant, the times they were open, is never more than 12 hours. Mrs. Herr testified to that. Mr. Kim testified to that. If there was some strange way that they were, they were paid more time. While Sister Counsel says that the pay records actually then show 60 hours, that's not true. There's none in front of you. And ask for the actual records that we had the opportunity to submit them, not true. Plaintiffs submitted a brief that said we didn't pay properly, and here's the damages, and they're based on this speculation. We came back and said, this is based on speculation, and here are representative samples of documents that show that that's not the case. They came back and said, oh, no, we weren't talking about what, you know, you rebutted what we said. We're talking about you didn't produce records for a two-year period. We could not respond to that. There's no way to do a SIR brief that says not true. That's why we say to you, you look at the protective order in this case, and it refers to the records that we produced to show that they did. You said that the restaurant was never open more than 12 hours, correct? Correct. Did the employees have to come in earlier to set up and stay later than the 12 to break down? No more than an hour before and an hour afterwards, and they were closed for, I believe, three hours in the afternoon, three or four hours in the afternoon. So, no, and that testimony was also unrebutted. There isn't an employee who came in and said, oh, no, we were supposed to do anything more. Mrs. Meng never says we were supposed to do anything more. They stipulated to that, those were the hours of the restaurant. Mrs. Kim testified that she came in and opened the door, and she locked up, and these are the hours she did it, and she was the first in and last to go. She or the manager. So, there is nothing in this record that supports the statement you heard that they didn't pay for overtime hours over 52 hours. They said, I will pay you, you know, I will pay you, Cindy Victor, you want to make $1,000 a day, I will pay you, that would be a fancy, I would pay you the, you know, X amount as regular, this is your overtime, this is what you'll make. You'll make $20 an hour, and the extra 12 hours, you'll make $30 an hour, and I will guarantee you 20 times 8 is 160, and, you know, whatever the other is times that, I will guarantee you that you will make that amount, and if I send you home early, I won't, but if I don't, if you have to work over, look at those employment contracts, I will pay you, and there is not one thing in this record that shows otherwise. So, this is not a case where they paid the same regardless of hours. They paid overtime a time and a half. There's no evidence. As for the liquidated damages, their questions pointed out exactly the issue. They believed they were doing right. They don't speak English. Their depositions had to be taken in Korean with a translator. They don't speak English. They relied on Amy Lee, who was Korean, who is their CPA, to tell them what to do. They kept the pay scheme, but then every time the Department of Labor came in and said, we want you to do something different, even before litigation, they did it. These are people who wanted to comply. They didn't change their records because they're playing games. They didn't recalculate. They didn't submit recalculated. If the Department of Labor said to them, today we want you to jump on your left foot, they jumped on their left foot. The fact that they changed whenever the Department of Labor wanted them to shouldn't be held as a crime against them. It should be showing their willingness to comply. Thank you, Counsel. Thank you.  There will be nothing further to be argued this morning. You may adjourn the call.